UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHARLES EDWARD LINCOLN, III**  **CIVIL ACTION**

**VERSUS**  **NO. 18-4542**

**MIKLOS MENDLER, ET AL.**  **SECTION "B"(4)**

## ORDER AND REASONS

Before the Court is a motion to dismiss filed by Defendants Miklos Mendler and Offside, LLC dba Avenue Café (Mendler Defendants). Rec. Doc. 14. The motion to dismiss addresses Plaintiff's initial complaint (Rec. Doc. 1). *See id.* Plaintiff Charles Edward Lincoln, III did not file an opposition, but did file an amended complaint.[1] Rec. Doc. 19. For the reasons discussed below,

**IT IS ORDERED** that the Mendler Defendants' motion to dismiss (Rec. Doc. 14) is **GRANTED** and Plaintiff's first, second, third, fourth, and fifth causes of action against Miklos Mendler and Offside, LLC are **DISMISSED**, at Plaintiff's cost.[2]

---

[1] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). But, a defendant who has filed an initial motion to dismiss does not need to file a second motion to dismiss when a plaintiff amends a complaint. See 6 Wright & Miller, Federal Practice and Procedure § 1476 (2005). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." *Id.*

[2] It would be a pointless gesture to allow amendment given the frivolous nature of this matter and Plaintiff's history of filing

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's amended complaint contains allegations against the Mendler Defendants, as well as the Mayor and City of New Orleans. *See* Rec. Doc. 19. This section will only discuss the facts as relevant to Plaintiff's claims against the Mendler Defendants because those are the only claims addressed in the motion to dismiss.

From 2012 until May 2, 2017, Plaintiff was a regular customer at the Avenue Café in New Orleans, Louisiana. *See id.* ¶¶ 31-32, 98-99. Plaintiff would spend hours per day at the Café and "treated [it] as [his] surrogate or extended home sometimes." *Id.* ¶¶ 25, 26. Prior to May 2017, the New Orleans city government began a process of removing certain monuments to Civil War era figures. Plaintiff opposes this effort. *See generally* Rec. Doc. 19. Plaintiff was filmed "speaking at the Jefferson Davis Monument," *id.* ¶ 31, about why he opposed the City's efforts to remove the monuments, *see id.* ¶ 98.

On May 2, 2017, Plaintiff arrived at the Café and was pulled aside by Defendant Miklos Mendler, the Café's owner. *See id.* Mendler told Plaintiff that members of the Café's staff had seen Plaintiff speaking about the monuments on television and did not

---

frivolous claims, previously dismissed. *See, e.g.*, *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").

want Plaintiff to continue spending time at the Café. *See id.* ¶ 32. Plaintiff "was in a state of absolute shock and dismay" upon learning that he was no longer welcome at the Café.³ *Id.* ¶ 33. Plaintiff has since "been too fearful to try" to find another café to frequent. *Id.* Plaintiff then filed suit against Mendler and the Café, arguing that they violated federal civil rights laws and the Louisiana Constitution, as well as committed multiple torts, by asking Plaintiff not to return to the Café. *See id.* ¶¶ 103-134. The Mendler Defendants filed a motion to dismiss Plaintiff's claims. *See* Rec. Doc. 14.

**LAW AND ANALYSIS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether a plaintiff has met his burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d

---

³ Plaintiff also "felt angry, betrayed, crushed, extremely depressed, fearful, injured, and outraged." Rec. Doc. 19 ¶ 33.

512, 520 (5th Cir. 2016)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))(some internal citations and quotation marks omitted).

**I. Federal Civil Rights Law**

Plaintiff alleges that the Mendler Defendants violated federal civil rights law by asking him not to return to the Café. *See* Rec. Doc. 19 ¶¶ 103-115. The relevant statutory provisions follow.

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation *on the ground of race, color, religion, or national origin*.

42 U.S.C. § 2000a (emphasis added).

> All persons shall be entitled to be free, at any establishment or place, from discrimination or segregation of any kind *on the ground of race, color, religion, or national origin*, if such discrimination or segregation is or purports to be required by any law, statute, ordinance, regulation, rule, or order of a State or any agency or political subdivision thereof.

*Id.* § 2000a-1 (emphasis added).

First Plaintiff has not stated a claim under §§ 2000a or 2000a-1 because he seeks damages, *see* Rec. Doc. 19 ¶¶ 107-108, 138-139, which he cannot recover under Title II. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under . . . Title [II], he cannot recover damages.").

4

Second, Plaintiff has not stated a claim under §§ 2000a or 2000a-1 because he has not alleged that he was discriminated against "on the ground of race, color, religion, or national origin." Construing Plaintiff's pleadings in his favor, he alleges that he is a victim of "discrimination against White People," discrimination against "White People suspected of supporting 'the Cult of the Lost Cause,'" "discrimination against and segregation of all overtly and openly conservative and traditional advocates" in New Orleans, and "racial and religious" "discrimination against and segregation of adherents to the supposed 'Cult of the Lost Cause." *See* Rec. Doc. 19 ¶¶ 40, 105, 109. Plaintiff's allegations are not plausible and do not state a claim under §§ 2000a or 2000a-1. *See Snow Ingredients*, 833 F.3d at 520.

Though Plaintiff asserts discrimination against "White People," his amended complaint makes clear that he actually believes he was asked to leave the Café because of his opposition to the removal of confederate monuments. *See, e.g.*, Rec. Doc. 19 ¶ 101 (alleging that Mendler asked him to leave the Café "because of [his] cultural and creedal beliefs"). Because Plaintiff does not allege that he was asked to leave the Café because of his race, he cannot state a claim for race-based discrimination. *See Malik v. Continental Airlines Inc.*, 305 F. App'x 165, 169-70 (5th Cir. 2008); *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 445 (5th Cir. 2006).

Moreover, Plaintiff has not plausibly alleged that his opposition to the removal of the Confederate monuments is a religious belief. Plaintiff effectively concedes this point by referring to his beliefs as a "secular, history-based 'civil religion' of the South, to which some refer as 'the Cult of the Lost Cause,'" Rec. Doc. 19 ¶ 50, and an "invented . . . artificial religious category," *id.* ¶ 112. Plaintiff goes so far as to allege that "adherents of that creed" do not "endorse" this religious label and "merely consider[] themselves supporters of traditional understandings, quite separate from [their] real religious traditions . . . ." *Id.* Because Plaintiff has not alleged that his opposition to the removal of confederate monuments is a religious belief, and has in fact stated that the religious label is "invented" and "artificial," *see Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014), he cannot sustain a claim for religious discrimination.

Insofar as Plaintiff also attempts to bring claims under 42 U.S.C. §§ 1981 and 1982, *see* Rec. Doc. 19 at 30, those efforts are also unavailing. Sections 1981 and 1982 only address racial discrimination, they do not provide a remedy for religious discrimination. *See* 42 U.S.C. §§ 1981, 1982; *Runyon v. McCrary*, 427 U.S. 160, 167 (1976). As Plaintiff has failed to state a claim for racial discrimination under §§ 2000a and 2000a-1, he has also

failed to state a claim under §§ 1981 and 1982. *See Malik*, 305 F. App'x at 169-70; *McCoy*, 177 F. App'x at 445-46.

**II. Louisiana Constitution Art. 1 §§ 3 & 12**

For the same reasons that Plaintiff's federal civil rights claims must be dismissed, Plaintiff's claims under the Louisiana Constitution cannot proceed. Plaintiff seeks relief under Article 1, sections 3 and 12 of the Louisiana Constitution, which prohibit discrimination based on, *inter alia*, race and religion. La. Const. art. 1 §§ 3, 12. As with his federal civil rights claims, Plaintiff's claims under the Louisiana Constitution allege racial and religious discrimination. *See* Rec. Doc. 19 at ¶¶ 123, 129. But, as discussed previously, Plaintiff has not plausibly alleged that the Mendler Defendants asked him to leave the Café because of his race or religious beliefs.

**III. Intentional & Negligent Infliction of Emotional Distress**

Plaintiff has also failed to state claims for intentional or negligent infliction of emotional distress. To state a claim for intentional infliction of emotional distress (IIED), Plaintiff must show "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by [him] was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "The conduct

7

must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

Plaintiff has failed to state a claim for IIED because he does not allege that the Mendler Defendants "desired to inflict emotional distress" or knew that such distress would occur when asking Plaintiff not to return to the Café. Instead, it appears from Plaintiff's pleadings that Mendler attempted to address the situation privately by "pull[ing] [Plaintiff] aside" and "ask[ing] [him] to come outside to a table on the sidewalk." *Id.* ¶ 31. Mendler then explained the concerns raised by the staff and asked Plaintiff not to return. *See id.* ¶ 32. Even under the deferential standards of a 12(b)(6) motion to dismiss, it would be unreasonable to infer from these facts that Mendler acted with the intent to cause Plaintiff severe emotional distress, or that he knew their actions would cause the same.

Also, Plaintiff does not plausibly allege that Mendler's conduct was "extreme and outrageous." *See* Rec. Doc. 19 ¶¶ 31-32. According to Plaintiff, a single interaction with Mendler gives rise to this claim. *See* Rec. Doc. 19 ¶ 31. During that interaction, Mendler privately explained why he did not want Plaintiff to return to the Café. *See id.* ¶ 32. Mendler allegedly apologized multiple

8

times about asking Plaintiff not to return, but explained that his staff did not feel safe around Plaintiff anymore. *See id.* Plaintiff does not allege that Mendler was angry, used inappropriate language, or raised his voice.

This does not meet the heavy bar for a claim of intentional infliction of emotional distress. *See, e.g.*, *White v. Monsanto Co.*, 585 So. 2d 1205, 1210-11 (La. 1991) (finding no claim for IIED based on a "one-minute outburst of profanity directed at three employees by a supervisor" even though the "vile language" was "crude, rough and uncalled for"); *Quinlan v. Sugar-Gold*, 219 So. 3d 1173, 1185-86 (La. Ct. App. 2017) (no probability of success on IIED claim where "defendant stated that her father was the 'intended victim' of elder abuse, declared that the plaintiffs betrayed her father's trust, described the plaintiffs' actions as 'vile' and referred to the plaintiffs as 'greedy, phony vultures.'") *Scamardo v. Dunaway*, 694 So. 2d 1041, 1042-43 (La. Ct. App. 1997 (plaintiff did not state claim for IIED by suing defendant fertility doctor who had affair with plaintiff's wife while plaintiff and his wife were seeking treatment with defendant); *see also cf. W.T.A. v. M.Y.*, 58 So. 3d 612, 617 (La. Ct. App. 2011) ("[C]oaching a child to make a false allegation of sexual abuse against his father is an intentional act to inflict emotional distress upon the father. It is an act that goes beyond all possible bounds of decency, and our civilized community must regard

it as atrocious and utterly intolerable."). Accordingly, Plaintiff has not stated a claim for IIED.

To state a claim for negligent infliction of emotional distress (NIED), Plaintiff must show that

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

*Covington v. Howard*, 146 So. 3d 933, 937 (La. Ct. App. 2014). When there is no allegation of physical injury, a defendant's duty is narrow. *Id.* "[R]ecovery is limited to facts constituting 'special circumstances' involving the especial likelihood of real and serious mental distress arising from the particular circumstances." *Id.* Recovery is limited "to those cases that involved facts where the defendant's conduct was outrageous or deemed outrageous because the defendant breached a special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant's conduct." *Id.* at 938.

Plaintiff has not alleged that he suffered physical injury. *See* Rec. Doc. 19 ¶ 33. As discussed previously, Plaintiff has not adequately pled that Mendler's conduct was outrageous. Nor does

Plaintiff allege that the Mendler Defendants owed him a "special direct duty." Plaintiff was a long-time patron of the Café, but there is no indication that this commercial relationship created a special duty owed to Plaintiff. Plaintiff neither alleges that he is especially susceptible to emotional distress, nor that, if he is, Mendler knew that when he asked Plaintiff not to return to the café. *See Covington*, 146 So. 3d at 940 ("The defendant's knowledge that a plaintiff is particularly susceptible to emotional distress is a factor to be considered."). Therefore, Plaintiff has failed to state a claim for NIED.

New Orleans, Louisiana, this 31st day of August, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE